*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOSE DANIEL ALONSO,

        Defendant-Appellant.

UNPUBLISHED
February 10, 2022

No. 347331
Van Buren Circuit Court
LC No. 2017-020932-FC

Before: M. J. KELLY, P.J., and STEPHENS and REDFORD, JJ.

STEPHENS, J. (*concurring*).

I concur with the majority's decision to affirm the trial court's denial of defendant's motion to withdraw his guilty plea conviction of assault with intent to commit great bodily harm less than murder (AWIGBH), MCL 750.84, on the basis of ineffective assistance from trial counsel. I believe counsel's performance was deficient. But, I would affirm under the prejudice prong.

The United States and Michigan Constitutions, US Const Am VI; Const 1963, art 1, § 20, guarantee criminal defendants "the right to the effective assistance of counsel," *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016). To establish a claim of ineffective assistance of counsel, defendant must show that: (1) trial counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007). Trial counsel's performance is deficient if it falls below an objective standard of professional reasonableness. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

"[A] defendant is entitled to the effective assistance of counsel in the plea-bargaining process." *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014), citing *Lafler v Cooper*, 566 US 156, 162; 132 S Ct 1376; 182 L Ed 2d 398 (2012). An ineffective-assistance claim may be premised on trial counsel's failure to properly inform the defendant of the consequences of accepting or rejecting a plea offer. *Hill v Lockhart*, 474 US 52, 57-58; 106 S Ct 366; 88 L Ed 2d 203 (1985). Relevant here, a defense lawyer must properly advise a defendant regarding "whether his plea carries a risk of deportation." *Padilla v Kentucky*, 559 US 356, 374; 130 S Ct 1473; 176 L Ed 2d 284 (2010).

-1-

The majority concludes that, under *Padilla*, trial counsel's performance was not deficient. The majority reasons that because determining whether AWIGBH will result in mandatory deportation is not straightforward and clear, trial counsel only had to advise defendant there may be adverse immigration consequences, which he did. I respectfully disagree. I believe it is "truly clear" that a conviction for AWIGBH would result in mandatory deportation and, therefore, trial counsel had to so advise defendant. I also believe trial counsel was obligated to consult with an immigration attorney in this instance. But because the trial court made the fact-finding to which deference is given that defendant had an immigration attorney, I conclude that failure of trial counsel to himself consult an immigration attorney, and properly advise defendant of the near-certainty of deportation, did not ultimately prejudice defendant.

There is no doubt "[i]mmigration law can be complex," considering "it is a legal specialty of its own." *Padilla*, 559 US at 369. Indeed, some criminal defense attorneys "may not be well versed in" immigration law, and there may "be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain." *Id*. Thus, when the law regarding deportation consequences "is not succinct and straightforward," a criminal defense attorney advising a defendant about the advantages and disadvantages of accepting a plea agreement "need do no more than advise a noncitizen client that pending criminal charges *may* carry a risk of adverse immigration consequences." *Id*. (emphasis added). "[W]hen the deportation consequence is truly clear," however, "the duty to give correct advice is equally clear," and the attorney must advise the defendant that a guilty plea will almost certainly result in deportation. *Id*.

Accordingly, the question is whether it is "truly clear" that AWIGBH is a "crime of violence" under 18 USC 16(a) and, therefore, constitutes an "aggravated felony" under 8 USC 1101(a)(43)(F) for purposes of determining whether defendant was subject to automatic deportation after conviction. I believe that a plain reading of 18 USC 16(a) would have led trial counsel to the conclusion that AWIGBH is an aggravated felony mandating deportation. Thus, trial counsel's advice that defendant "may" face immigration consequences was deficient.

Under 8 USC 1227(a)(2)(A)(*iii*) of the Immigration and Nationality Act, 8 USC 1101 *et seq*., "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." An "aggravated felony" is a "crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year[.]" 8 USC 1101(a)(43)(F) (footnote omitted). Thus, to constitute an aggravated felony, a crime must (1) have a term of imprisonment of at least one year and (2) be a crime of violence. *Id*. "Crime of violence" is defined by 18 USC 16(a) as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another . . . ." I believe it is "truly clear" that defendant's conviction for AWIGBH qualifies as an aggravated felony requiring mandatory deportation.

There is no question defendant's conviction for AWIGBH satisfies the "term of imprisonment" requirement in 8 USC 1101(a)(43)(F). In *Shaya v Holder*, 586 F3d 401, 403 (CA 6, 2009), the United States Court of Appeals for the Sixth Circuit held that "for the purposes of Section 1101(a)(43)(F), indeterminate prison sentences in Michigan must be measured by the term actually served by the petitioner rather than by the maximum statutory sentence." Accordingly, the *Shaya* Court held, "when using Michigan indeterminate sentences as the predicate for classifying someone as an 'aggravated felon', the term must be measured by the sentence actually

served or the minimum sentence given, whichever is greater . . . ." *Id*. Defendant was sentenced to a minimum of five years' imprisonment for his AWIGBH conviction. This is clearly a sentence of "at least one year." Accordingly, 8 USC 1101(a)(43)(F) is satisfied.

The only remaining question is whether AWIGBH qualifies as a "crime of violence" under 18 USC 16(a). The elements of AWIGBH are "(1) an assault, i.e., 'an attempt or offer with force and violence to do corporal hurt to another' coupled with (2) a specific intent to do great bodily harm less than murder." *People v Bailey*, 451 Mich 657, 668-669; 549 NW2d 325 (1996), quoting *People v Smith*, 217 Mich 669, 673; 187 NW2d 304 (1922); see also *People v Russell*, 297 Mich App 707, 721; 825 NW2d 623 (2012) (stating the same). The relevant inquiry then is whether "an assault, i.e., 'an attempt or offer with force and violence to do corporal hurt to another,' " is clearly "the use, attempted use, or threatened use of physical force against the property or person of another." The elements of AWIGBH nearly mirror the elements of a "crime of violence." See *Bailey*, 451 Mich at 668-669; 18 USC 16(a). As a result, I conclude that AWIGBH constitutes a "crime of violence" and, thus, given the five-year prison term, is an aggravated felony requiring deportation.

The majority says that "[t]o state the analysis" of determining whether AWIGBH will result in mandatory deportation "is to show its complexity." Respectfully, the majority overstates the difficulty of determining whether AWIGBH constitutes a "crime of violence" under 18 USC 16(a). A constitutionally-competent criminal defense attorney can certainly easily research the relevant state and federal statutes and caselaw, and ascertain their meaning. A criminal defense attorney is expected to conduct basic research regarding the issues in a client's case. See *Hinton v Alabama*, 571 US 263, 274; 134 S Ct 1081; 188 L Ed 2d 1 (2014) ("An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under [*Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984)]."). By the time of defendant's plea in 2017—seven years after *Padilla* was decided—trial counsel should have been aware of that decision's pronouncement and familiarized himself with not only *Padilla*, but the relevant statutory provisions discussed therein, including 8 USC 1101(a)(43)(F) as discussed in Justice Alito's concurring opinion. Thus, although this case may not be as straightforward as *Padilla*, it nonetheless does not appear to me particularly burdensome in this instance for an attorney to determine whether AWIGBH constitutes a "crime of violence" under 18 USC 16(a) whether through independent research or consultation with immigration counsel.

The majority also references several provisions in the INA as supporting its conclusion that determining whether AWIGBH constitutes an aggravated felony is "not succinct and straightforward." *Padilla*, 559 US at 369. I believe, however, that after *Padilla*, all reasonable criminal defense counsel should have a working knowledge of these statutory provisions. That is, I believe that all criminal defense attorneys should have read *Padilla* and familiarized themselves with provisions of the INA that could be particularly relevant in cases involving an alien. Such conduct is not unreasonable to expect of a constitutionally-competent criminal defense attorney.

Because I conclude that it is "truly clear" that AWIGBH constitutes a "crime of violence" under 18 USC 16(a), and defendant received a sentence of "at least one year" for his AWIGBH conviction, I believe trial counsel was required to advise defendant that his conviction would

certainly result in his deportation. *Padilla*, 559 US at 369. Accordingly, trial counsel's advice, that defendant "may" face deportation, was deficient.

I also believe trial counsel was obligated to consult an immigration attorney regarding defendant's charges and potential immigration consequences. Trial counsel admitted at the *Ginther*[1] hearing that he was "not an immigration attorney." Under an objective standard of reasonableness, an attorney lacking knowledge of a particular practice area relevant to a client's case would certainly consult an attorney with knowledge of that practice area. Indeed, even if trial counsel's duty was to "do no more than" advise defendant that his pending criminal charges may have adverse immigration consequences, *Padilla*, 559 US at 369, to do so he must have at least some basic understanding of immigration law. Such an understanding could easily be obtained by consulting an immigration attorney. And it would not have been particularly burdensome in this case given defendant's statements to trial counsel that he and his family were working with an immigration attorney. That is, trial counsel here had a readily-available immigration attorney he could have consulted. Because I believe that to properly advise a criminal defendant regarding immigration consequences, even if only possible consequences, a criminal defense attorney lacking knowledge of immigration law should consult an immigration attorney, failure to do so constitutes deficient performance.

Although I believe trial counsel performed deficiently by failing to consult an immigration attorney and because a plain reading of 18 USC 16(a) makes clear that AWIGBH is an aggravated felony, defendant has failed to establish he was prejudiced by that deficient performance. To show prejudice in the guilty-plea context, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and instead would have insisted on going to trial." *Hill*, 474 US at 59. "[T]o obtain relief on this type of claim, a [defendant] must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 US at 372.

At the *Ginther* hearing, trial counsel testified that defendant brought up that his family was consulting with an immigration attorney and that he had "independent knowledge that his family was, or had, consulted with an immigration attorney." Trial counsel also indicated it was his "belief that [defendant's] family was taking care of the deportation" issue. The trial court made the following findings:

> In this particular case, Mr. Alonso came to [trial counsel], apparently through—what appears to be through—another attorney. There was an immigration lawyer already involved because of a prior conviction so [trial counsel] came into this understanding, reasonably so or inferring reasonably so, that there was an immigration attorney already involved. Mr. Alonso told him there was an immigration attorney already involved. Mr. Alonso talked to [trial counsel] about the immigration consequences. [Trial counsel] testified that he told Mr. Alonso there will be consequences. He indicated he didn't know what the consequences

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-4-

would be, whether it would be deportation or not, but he made it clear to Mr. Alonso that there will be consequences.

I believe the trial court's finding, that an immigration attorney was already involved in the case because of a prior conviction, removed any prejudice trial counsel's deficient performance may have caused. Despite the fact defendant and his family had access to, and were consulting with, an immigration attorney, defendant still decided to plead guilty. Thus, defendant has failed to show that, but for trial counsel's failure to himself consult an immigration attorney and accurately advise defendant regarding the deportation consequences, there is a reasonable probability he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 US at 59. Accordingly, because the trial court made a finding of fact based on the testimony that defendant had immigration counsel, the failure of trial counsel to himself consult or properly advise regarding deportation consequences did not ultimately prejudice defendant.

In conclusion, I believe that trial counsel's failure to consult an immigration attorney and advise defendant that a conviction for AWIGBH would certainly result in mandatory deportation constituted deficient performance. In my view, a plain reading of 18 USC 16(a) would have led trial counsel to the conclusion that AWIGBH is an aggravated felony mandating deportation, and trial counsel should have consulted an immigration attorney. Even so, the trial court's finding that defendant had an immigration attorney removed any prejudice trial counsel's deficient performance may have caused. Thus, I agree with the decision to affirm the trial court's denial of defendant's motion to withdraw his guilty plea on the basis of ineffective assistance of counsel.

/s/ Cynthia Diane Stephens